UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                               Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

|  Kelly Davis  | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                                Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER (1) GRANTING IN PART APPLICATION FOR TEMPORARY RESTRAINING ORDER (Doc. 12), AND (2) ORDERING RESPONDENTS TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Before the Court is a Renewed *Ex Parte* Application for Temporary Restraining Order filed by Petitioner Hung Huu Anh Hoang.  (App., Doc. 12.)  Respondents Kristi Noem, Pamela Bondi, Thomas Giles, James Pilkington, and Warden, Geo Group Inc., opposed, and Petitioner relied.  (Opp., Doc. 14; Reply, Doc. 16.)  Having reviewed the papers, the Court GRANTS IN PART Petitioner's Application.

**I.     BACKGROUND**

Petitioner Hung Hoang is a citizen of Vietnam who is currently detained by Immigration and Customs Enforcement ("ICE") in Adelanto, California.  (Preciado Decl. ¶ 5, Doc. 14-1; Hoang Decl. ¶ 1, Doc. 12-1.)  Hoang was born in Vietnam and entered the United States in 1991.  (Hoang Decl. ¶¶ 4a–4b.)  Hoang was convicted of first-degree burglary in 1997 and sentenced to nine years in prison.  (Preciado Decl. ¶ 7.)  In April 2004, he was issued a final order of removal to Vietnam.  (*Id*. ¶¶ 8–9; Ex. A to Preciado Decl.)  Hoang was detained for around three months, but in July 2004, Hoang was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                                    Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

released pursuant to an Order of Supervision ("OSUP"), as his removal to Vietnam could not be effectuated.  (Hoang Decl. ¶ 4d; Ex. 1 to Hoang Decl; Ex. 2 to Hoang Decl.; Ex. B to Preciado Decl., Order of Supervision.)  Hoang's OSUP requires, among other conditions, that he report for check-in appointments at the request of ICE, and assist ICE in obtaining any necessary travel documents.  (Order of Supervision.)

Hoang maintains that for twenty-one years, he has always reported for check-ins, and that he has never been told he has been late for a check-in.  (Hoang Decl. ¶¶ 4g–4h.)  However, according to Respondents, Hoang failed to timely report for a check-in which was scheduled on February 27, 2024, between 12 p.m. and 1 p.m.  (Preciado Decl. ¶ 12.)  Respondents further contend that on February 28, 2025, ICE instructed Hoang to provide proof of his passport application on his next check-in date, but that Hoang failed to bring that proof for his next check-in on August 27, 2025.  (*Id.* ¶ 13.)  Hoang, however, maintains that at his August 2025 check-in, he did provide to ICE the requested letter from the Vietnamese Embassy denying him travel documents.  (Hoang Decl. ¶¶ 4k–4n.)

Hoang was detained on October 28, 2025, after he reported for a scheduled check-in.  (*Id.* ¶ 4o.)  The same day, ICE issued Hoang a Notice of Revocation of Release, stating that "[i]t is expected that [he] will be removed to Vietnam in the foreseeable future" and that he "failed to comply with OSUP reporting requirements and failed to provide [his] travel documents."  (Ex. C to Preciado Decl., Notice of Revocation of Release.)  Respondents represent that ICE served Hoang with a copy of the Notice that same day at 12:22 p.m., at ICE ERO/Los Angeles.  (Preciado Decl. ¶ 16; *see* Notice of Revocation of Release.)  However, Hoang contends that he had reported as instructed to the ISAP office, rather than the ERO office, that he was detained around 8:30 a.m. or 9 a.m., and that he was not given any papers when he was detained.  (Hoang Decl. ¶¶ 4n–4o.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                                      Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

Hoang was taken to Adelanto Detention Facility on October 29, 2025, where he remains to date.  (*Id.* ¶¶ 1, 4v.)  The parties agree that Hoang was not afforded any informal interview until December 2, 2025, which was after he filed his Petition and first TRO application.  (*Id.* ¶ 4aa; Preciado Decl. ¶ 17; Ex. D to Preciado Decl.)  Respondents assert that at that interview, Hoang "had an opportunity to respond to the reasons for revocation of his OSUP release and to provide any evidence to show that his removal is unlikely," and represent that Hoang had no response.  (Preciado Decl. ¶ 17; *see* Ex. D to Preciado Decl.)  Hoang, however, describes the December 2 interaction as one where an ICE officer "checked [his] wristband to confirm [his] alien number," then "told [him] that [he] would not be released," without asking any questions or providing any opportunity to respond.  (Hoang Decl. ¶ 4aa.)

Respondents aver that "DHS will be able to effectuate [Hoang's] removal to Vietnam in the reasonably foreseeable future."  (Opp. at 11.)  Respondents note that they submitted a travel document request for Hoang to the Vietnam Embassy on November 24, 2025, and that "Vietnam has been issuing travel documents when DHS has made such requests for Vietnamese nationals[.]"  (Preciado Decl. ¶¶ 22–23.)

On November 25, 2025, Hoang filed a Petition for a writ of habeas corpus and an Application for Preliminary Injunction and Temporary Restraining Order, which consisted of only a few paragraphs relating to the legal standard governing Hoang's detention and was not accompanied by any declaration.  (Petition, Doc. 2; First App, Doc. 3.)  The Court denied Hoang's Application because Hoang had failed to provide the Court with admissible evidence supporting his claims.  (Order Denying First App. at 4, Doc. 10.)  On December 24, 2025, Hoang filed a renewed Application for Temporary Restraining Order, accompanied by declarations from Hoang and his attorney.  (Hoang Decl.; Hein Decl., Doc. 12.2.)  Hoang argues that he is being unlawfully detained following the improper revocation of his release. (App. at 9.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO  Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

## II. LEGAL STANDARD

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  "The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held." *Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974)).

To obtain a temporary restraining order ("TRO"), a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that [a TRO] is in the public interest." *Winter*, 555 U.S. at 22.  This "requires the plaintiff to make a showing on all four prongs." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Alternatively, under the Ninth Circuit's sliding scale test, a plaintiff may obtain a TRO by showing "that there are 'serious questions going to the merits'" and that "the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135) (emphasis omitted).  The final two *Winter* factors "merge" when a TRO is sought against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                              Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

### III. ANALYSIS

    **A.**    **Likelihood of Success on the Merits: Unlawful Revocation of Release**

The Attorney General possesses the authority to detain and remove noncitizens under 8 U.S.C. § 1231.  "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  *Id.* § 1231(a)(3).  Specifically, 8 C.F.R. § 241.13 governs a noncitizen's release where, as here, the noncitizen has been released because there is "good reason to believe there is no significant likelihood of removal to the country to which he or she was order removed . . . in the reasonably foreseeable future." (*See* Hoang Decl. ¶ 4d.)

8 C.F.R. § 241.13(i) outlines the requirements for the revocation of a noncitizen's release.  It provides that a noncitizen's release may be revoked, and he may be returned to custody, if he "violates any of the conditions of release" or if "the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  *Id.* § 241.13(i)(2).  It further mandates the following "revocation procedures":

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release.  The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.  The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.  The revocation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                                        Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

    custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3).

    First, the Court questions whether Hoang's release was properly revoked either because he violated the conditions of his release, or because there is a significant likelihood that he will be removed to Vietnam in the reasonably foreseeable future.  The Notice of Revocation of Release cites to both reasons to justify the revocation of his release, but does not provide further detail.  (Notice of Revocation of Release.)  Officer Preciado's declaration elaborates slightly that Hoang violated the conditions of his release by failing "to report timely for his scheduled check-in on February 27, 2024," and that "[o]n or about August 27, 2025, Hoang failed to bring [proof of his passport application] but reportedly told the officer that his passport should come within a month."  (Preciado Decl. ¶¶ 12–13.)  However, Officer Preciado does not provide a clear evidentiary foundation for his statements (*see id.* ¶ 2), and Hoang's declaration directly rebuts Officer Preciado's assertions.  (*See* Hoang Decl. ¶¶ 4h, 4m ("In those twenty-one years, I was never told I was late to check-in. . . .  When I reported for my August 2025 check-in . . . I gave them the February 28, 2025, letter denying me travel documents.").)

    Further, the Notice of Revocation of Release provides that Hoang's release was also revoked because "[i]t is expected that you will be removed to Vietnam in the foreseeable future."  (Notice of Revocation of Release.)  To justify the revocation of Hoang's release on these grounds, Respondents note that they submitted another travel document request for Hoang in November—nearly one month after his release was revoked—which they expect to be successful because "DHS has indeed recently been able to timely obtain travel documents and effectuate removals to Vietnam."  (Preciado

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                                                         Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

Decl. ¶ 23.)  But Hoang was previously released because his removal to Vietnam could not be effectuated, and he provides evidence that conditions have not changed:  a February 28, 2025 letter from the Vietnam Embassy states, "with the lack of an agreement between the Governments of Vietnam and the United States on your deportation, the Embassy cannot issue any travel document for you for the time being." (Hoang Decl. ¶¶ 4d, 4k; Ex. 3 to Hoang Decl.)  The Court is skeptical that Respondents' generalized assertions about other removals to Vietnam are sufficient to rebut Petitioner's showing that his removal is not reasonably foreseeable.  *See Ton v. Noem*, No. 25-3348 (C.D. Cal. Dec. 22, 2025) ("As other courts have noted, 'the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted,' [so] Officer Suarez's conclusory statement that Vietnam 'has been issuing travel documents' for pre-1995 immigrants without any discussion of when or how often this has occurred are inadequate to show Ton's removal is likely in the reasonably foreseeable future, given the context.") (quoting *Nguyen v. Scott*, 796 F. Supp. 3d. 703, 722–23 (W.D. Wash. 2025)).

But the Court need not resolve these precise issues, because ICE's failure to provide Hoang with a prompt informal interview plainly violated 8 C.F.R § 241.13(i).  It is uncontested that when Hoang was re-detained on October 28, 2025, he was not afforded any informal interview until December 2, 2025, more than one month after he was returned to custody.  (Preciado Decl. ¶ 17.)  Such a delay contravenes the requirement that the "initial informal interview" be conducted "promptly after [Hoang's] return to Service custody."  *See M.S.L. v. Bostock*, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (finding that an interview given 27 days after the noncitizen was taken into custody was not prompt); *Duong v. Noem*, 2025 WL 3268414, at *3 (S.D. Cal. Nov. 24, 2025) (finding that an interview given six weeks after the noncitizen was taken into custody was not prompt).  Moreover, it is unclear whether the December 2 interview properly provided Hoang with "an opportunity to respond to the reasons for revocation"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-03177-JLS-RAO            Date: January 12, 2026
Title: Hung Huu Anh Hoang v. Kristi Noem et al

or allowed him to "submit any evidence or information" to contest the reasons for revocation. 8 C.F.R § 241.13(i)(3). Although Officer Preciado attests that "DHS conducted an informal interview of Hoang, during which he had an opportunity to respond to the reasons for revocation of his OSUP release and to provide any evidence to show that his removal is unlikely," Hoang provides a much more detailed account of his December 2 interaction with an ICE officer. (Preciado Decl. ¶ 17; Hoang Decl. ¶¶ 4aa–4bb.) According to Hoang, he was told that he would not be released, he was not asked any questions, and he was not given any opportunity to respond. (Hoang Dec. ¶ 4aa.)

"It is well established that government agencies are required to follow their own regulations." *Delkash v. Noem*, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (quoting *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). It is apparent that Hoang was not afforded any initial informal interview promptly after re-detention, so Hoang has established a likelihood of success on the merits with respect to his contention that ICE violated § 241.13.

      **B.**     **Irreparable Harm, Balance of the Equities, and the Public Interest**

The remaining *Winter* factors weigh in favor of granting a TRO. First, absent relief, Hoang will continue to face irreparable harm. "The Ninth Circuit has recognized "'irreparable harms imposed on anyone subject to immigration detention,' including 'the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained.'" *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). Such harms are present here: because Hoang has been detained for over two months, he has been separated from his fiancé and unable to attend his work as a mechanic. (Hoang Decl. ¶ 4dd.) As such, he has not been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                                                   Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

able to economically provide or care for his mother, for whom is the sole provider, or his seven-year-old daughter, over whom he has sole custody.  (*Id.*)

The last two *Winter* factors—the balance of the equities and the public interest—also weigh in favor of granting relief.  As mentioned above, the final two *Winter* factors merge when the opposing party is the government.  *See Nken*, 556 U.S. at 435.  While the public has an interest in the efficient execution of this country's immigration laws, it also has a "strong interest in upholding procedural protections against unlawful detention[.]"  *Jorge M. F. v. Wilkinson*, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).  Hoang has shown that his re-detention was likely unlawful.  Further, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Id.* (quoting *Hernandez*, 872 F.3d at 996) (citation modified).  Hoang's ongoing detention therefore significantly harms the public interest.  Moreover, Respondents have a weak interest in Hoang's continued detention.  Because Hoang is the sole provider for his mother and seven-year-old daughter, and has routinely appeared at check-ins pursuant to his OSUP for twenty-one years, he is unlikely to be a flight risk.  Thus, if Respondents do obtain travel documents for Hoang, the risk that they will not be able to effectuate Hoang's removal to Vietnam is low.  The balance of the equities and the public interest therefore favor Hoang.

In sum, Hoang has sufficiently shown that there are serious questions going to the merits of his claim, that the balance of hardships tip "sharply" in his favor, and that the other two *Winter* factors are satisfied.  *Alliance for the Wild Rockies*, 632 F.3d at 1135.  Hoang is therefore entitled to relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                                   Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

### C. Remedy

Respondents argue that ICE's failure to provide Hoang with a prompt interview should result in relief designed to "cure any purported post-revocation defect by narrowly tailored means well short of release from detention," such as an order that ICE provide another informal interview to Hoang.  (Opp. at 22.)

However, to require such an interview now, more than two months after Hoang's re-detention, would not cure the violation suffered by Hoang.  The regulations require that the "initial informal interview" be conducted "promptly after" return to custody, 8 C.F.R § 241.13(i)(3); any order could not retroactively provide Hoang with the prompt interview he was due.  Indeed, the regulation makes clear that the revocation itself must be accompanied by the interview, to allow for an evaluation of any information contesting the reasons for revocation submitted by a noncitizen.  *See id.*  Because the revocation did not do so here, it was unlawful.  *See Delkash*, 2025 WL 2683988, at *5 ("A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures—in particular the failure to give a detainee the required notice and interview—renders the re-detention unlawful.") (collecting cases). The proper remedy is therefore Hoang's release from custody, thereby returning Hoang to the status quo before his release was improperly revoked.[1]  *See id.* (ordering a noncitizen's release where ICE failed to follow its procedures in revoking release); *Asghar Payman Farsi v. Kristi Noem*, 2025 WL 3764075, at *3 (C.D. Cal. Dec. 19, 2025) (same); *Duong*, 2025 WL 3268414, at *3 (same); *Grigorian v. Bondi*, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) (same); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166

---

[1] Hoang's Application also requests an order enjoining Respondents from removing Hoang from the United States or taking him from the Central District of California, but provides no facts or argument in support of such a request.  (App. at 33.)  The Court therefore may not award such relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                                          Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

(W.D.N.Y. 2025) (same); *M.S.L.*, 2025 WL 2430267, at *11–12 (D. Or. Aug. 21, 2025) (same).

    **D.**    **Bond**

Pursuant to Rule 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  A district court has "discretion as to the amount of security required, *if any*." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)) (emphasis in original, further citation omitted).  A court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*  Respondents make no argument that a security should be required or that they are likely to suffer harm if their conduct is enjoined.  The Court concludes that no security is required.

**IV.**    <u>**CONCLUSION**</u>

For the above reasons, Petitioner's Application is GRANTED.  Respondents are ORDERED to release Petitioner forthwith, subject to the conditions of his prior OSUP, and ENJOINED from re-detaining Petitioner in a manner inconsistent with their regulations.  This Order shall remain in effect though **January 26, 2026**, unless the Court extends this period, before that date, and for good cause.  Fed. R. Civ. P. 65(b)(2).  If Respondents wish to further brief the matter, they may file a further response no later than **January 15, 2026**.  Petitioner may reply no later than **January 20, 2026**.  The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03177-JLS-RAO                              Date: January 12, 2026
Title:  Hung Huu Anh Hoang v. Kristi Noem et al

shall hold a hearing on **January 22, 2026 at 3:30 p.m.** as to why a preliminary injunction should not issue.[2]

Initials of Deputy Clerk: kd

---

[2] The parties may seek to extend these deadlines by stipulation.